The third case that we'll hear this morning is a case called Chaussee v. Auto-Owners 251120. We'll hear from counsel whenever you're ready. May it please the Court, my name is Gideon Irving. I'm appearing on behalf of the plaintiff appellants. Our clients were added as defendants in the underlying litigation by way of the second amended complaint. For auto owners to be able to avoid its duty to defend against that complaint, they needed to prove that there was no arguable, plausible, or even doubtful way that the factual allegations alleged against our clients could be construed as property damage caused by an occurrence as defined in the policy. And I'm going to start with the occurrence issue. Colorado law recognizes that volitional acts that result in damage that is unintended, unforeseen, or unexpected can fall within the policy's definition of occurrence. And when we look at the factual allegations alleged against our three clients, as distinct from the seven other defendants in the underlying case, it's unclear what our clients are alleged to have actually done. It's unclear that our clients, or I should say rather it's unalleged, that our clients actually knew about Vansant, knew Vansant was attempting to operate an RV park. And it's absolutely not alleged that our clients intended to prevent Vansant from doing so. And that's well within the policy's definition of occurrence. I'm confused about that, I guess. It seemed like that's the only thing they alleged. I mean, they're part of a group. I get that it's a confusing, this underlying case in state court, very confusing. But there isn't any question that they've grouped your, you know, all these other folks that they've sued as defendants in this kind of nebulous claim. But no question they're alleging intentional acts by all of these defendants. And your clients may have been a little confused about the complaint, and I don't blame them, but I don't understand how you can suggest that they weren't accusing your clients of intentional action. Your Honor, I'll start first with the applicable legal standard, which is that the facts of the complaint and not the stylization or the legal claims are what controls the inquiry on the duty to defend. Right, right, I understand. But you've got to look at the allegations. Right, and I'd like to do that. So as to the factual allegations, and your Honor, I don't want to belabor it because I know you understand it, but there are places where it's alleged that the town defendants did something, which does not include our clients. And then there's the same allegation, and I'm speaking directly to the passage of these ordinances. One place says the town defendants passed them. One place says that our defendants, as part of a group of Chaucey defendants, passed them. And then there's other particular allegations that say specifically Brent, Tyler, Cameron, Chaucey were involved in it. Right, and there's a lot of confusion, a lot of lack of specificity. Exactly. But that doesn't change the essential nature of the complaint or the petition. Right, and so, your Honor, the point is that it's not that there is a conspiracy claim, but again, looking at those factual allegations I was just talking about, when our clients are vaguely and ambiguously included somewhere and excluded elsewhere, that is where, under the Colorado legal test, there is some doubt that arises as to the level of our client's culpability. And on that point, I'll direct this Court to its own decision. It's unpublished, but it's the KF103 case that was cited in our briefs. And as to one of the claims that the Court analyzed there, it specifically explained how there was some allegation of intentional conduct, there was some allegation of unintentional conduct, and that just because intentional allegations were interspersed with unintentional conduct, it's not enough to remove this. What allegation was there in this kind of confusing complaint of unintentional conduct? I get that there was unclear allegations about a lot of things, but certainly there was nothing that I could see alleged about anybody other than intentional conduct. Right. So I see this as distinct from that case, where you have a mix of both kinds of conduct alleged. And, Your Honor, your question somewhat implicates the question about who bears the burden here, because it's the insurance company's burden to prove that the allegations are completely outside of any plausible reading that they could be an occurrence, could even doubtfully be an occurrence. Nevertheless, could you answer for me what you think the allegations were that alleged unintentional conduct? Right. And so, again, we have to take into account this ambiguity. The specific allegations as to our three clients are that they were the grandparents of certain other family members, that they were property or business owners. And what I'd like to do to direct the Court to a particular allegation that I think kind of sums it up and explains it, it's Section 77, and it's a subparagraph B in that underlying complaint, where it says that our clients, by exerting their power and influence, ensured that the 2016 and 2018 ordinances were passed. And so that is, again, at most a general intent alleged to our clients, but it does not rise to that specific intent to cause an injury by preventing Van Sant from operating an RV park. So I just want to make sure that I understand that last part of your answer to my colleague's question. So when you were asked to identify an allegation that suggests that their liability was predicated on unintentional conduct, we can refer to paragraph 77B, and that is, other than allegations about parental relationships, which I don't think it's fair to say that those are unintentional conduct. I mean, it is unintentional who your family is. But the only thing that you can put your finger on is 77B? Well, Your Honor, I can expand on that. So I point to 77B because, to me, when you look at the factual allegations as a whole and recognizing where they're inconsistent and unclear and vague, that, to me, sums up what this complaint is trying to say. Well, the reason I'm asking you that is 77B is obviously preceded by the introductory clause, defendants have variously engaged in overt acts in furtherance of that combination or conspiracy. Paragraph 75 that introduces paragraph 77B uses verbs involving deliberate conduct, in fact, including the verb deliberately. Defendants have knowingly by deliberately participating in a shared commitment to a common scheme. How can you engage in a common scheme or a conspiracy? Or to take your paragraph, how can you engage in overt facts in furtherance of a combination or conspiracy by accident? Or to use the first 30 seconds of your argument, when you don't foresee something, you don't subject it, how can you engage in a combination or conspiracy under the allegation you're hanging your head on to say, well, we didn't foresee that? So the answer really to your question, Your Honor, is that it's the factual allegations and not the fact that a conspiracy claim was brought against our clients that determine the question of the duty to defend. But you answered her question based on an allegation not in the background section involving the historical facts, but you're saying, let's look at 77, ignore the prelude, combination or conspiracy, ignore 75. What I want you three judges to rely on are the background facts that don't say anything about any prep basis for liability, whether it's deliberate or accidental. All it identifies is parental relationships, sibling relationships, grandparental relationships. And those family relationships don't provide a factual predicate for liability, whether it's deliberate or accidental. And, Your Honor, that's where I'll disagree with you, because we don't know precisely, when you're talking about the overt acts that our clients are alleged to have taken in furtherance of a conspiracy, we cannot figure out what those overt acts supposedly are. There are not factual allegations. Again, you're talking about lack of specifics here. But that's totally different than saying that this somehow asserts an unintended act. Well, and, Your Honor. And that even paragraph you point to, that these defendants exerted power over the town to ensure that the amendments were enacted, that certainly doesn't suggest unintended consequences to me. I mean, it sounds like they exerted their power in order to ensure that something else happened. I mean, that's not, I just don't see reading the allegation exactly the opposite. And perhaps it would shake out that way when the duty to indemnify was later decided. But here on the duty to defend question, there is some doubt about that. And, Your Honor, I can put some more meat on the bones of this. And so, just conceptually, it's unclear what our clients are alleged to have actually done. But they are alleged to have done something. And at most, our clients are alleged to have ensured the passage of these amendments. But there are not allegations that show that our clients specifically intended to prevent Van Sant from operating the RV park. Maybe that's how they shake out in the end. But it is at least doubtful at this stage whether or not the allegations specifically allege that type of specific intent. And, Your Honors, I would like to kind of paint this conceptual approach. Isn't there an allegation in the complaint that the Chaucey's, quote, illegally contracted, combined, or conspired, and will continue to do so, to restrain trade in a relevant market consisting of the long-term rental of RV parking spaces by RV parks? Yes, Your Honor. And two points about that. First is that's another general allegation against a group of defendants where it's unclear how our clients actually may have been involved in that. But the second point is that those allegations, allegations of those nature, that say that our clients participated in a conspiracy and knowingly did these things, those are legal conclusions that are devoid of any actual factual specificity or elaboration as to our clients. And district courts regularly exclude those types of allegations when they're reviewing the sufficiency of the complaint. Do they, when they're applying Colorado law, when they compare the four corners of the complaint to the terms of the contract, the insurance contract? They do, Your Honor. Colorado cannot be more clear that it's the factual allegations and not the legal claims. And I might add to your kind of question there, Your Honor, is that the courts required to view the factual allegations in the way that is most likely to result in possible coverage for our clients. And so that includes looking at some specific factual allegations on their own or viewing the complaint in toto. And that is well established in the case law, but especially in the Heckler mining case. And if the court wants a little more elucidation on that, footnote eight in the Heckler case specifically talks about viewing allegations in toto. If there is some doubt in the text of the opinion itself says if there are any facts that could plausibly be construed as falling within the coverage of the policy, then the duty to defend is triggered. Unless the court has further questions right now, I'd like to reserve the remainder of my time. It's OK. Thank you. Good morning, Your Honors. My name is Aaron Bell. And may it please the court, I represent the defendant Appellee Auto Owners Insurance. The policy at issue here requires both that the damage be property damage and that that property damage be caused by an accident. If either of those is missing, there's no coverage and the district court's order should be upheld. In this case, in the underlying suit, the only claims against these appellants were Sherman Act conspiracy claims. And likewise, the factual allegations in the complaint were of a conspiracy and intentional conduct, not of an accident. Insurance is not designed to cover an insurer's intentional acts like conspiracy. There's no way to reasonably price the risks that an insurer will engage in intentional wrongful conduct. As the Seventh Circuit noted in the Curtis Universal case, insurance companies will not insure against liability for antitrust violations, a liability based on deliberate rather than inadvertent actions. In this, the policy here requires that there be an occurrence. And the policy then specifically defines occurrence as an accident. The allegations in the complaint, and Your Honors, I think, brought this out already, so I won't belabor it. But the allegations over and over again in this complaint are of intentional, deliberate conduct. And there simply are no allegations of accidental conduct. Now, the plaintiff's appellant makes the argument that the pleadings are unclear, that the pleadings are threadbare. Well, threadbare allegations of a conspiracy are threadbare allegations of a conspiracy. They don't transform into allegations of an accident. And there just are no such allegations. And I think it was very notable that when specifically asked to provide an example, the example provided was contextually very clearly of intentional conduct. As Your Honor noted, Paragraph 77 is immediately preceded by Paragraph 75, which uses words like intentional and deliberate and conspiracy. Can I ask you a hypothetical question? What if the plaintiff, during the pendency of the proceeding in district court, said, We want to amend the complaint. We want to limit the antitrust allegations to the Chelsea relatives who were in municipal government. And that the plaintiffs in this case, who were seeking reimbursement for their defense costs, we, the plaintiffs, are not alleging that they knew about this conspiracy. The conspiracy was on the part of their relatives, their kids. But that they were beneficiaries of this conspiracy. In other words, the town defendants conspired to promote the business interests of their relatives, the plaintiffs in this case. And then the district court says, Well, you know, this seems to be maybe you're bringing up, this is an entirely different lawsuit than the one you had pleaded earlier. And the reply from the plaintiff is, Well, tell us what is inconsistent with that, between that and the complaint that we're here on. It's entirely consistent. Wouldn't that complaint have triggered an arguable duty to defend? Because that would be an accidental benefit to the Chelsea defendants in the Van Sant litigation, where there was no allegation of a conspiracy on their part. They were the beneficiaries of the conspiracy by their relatives. Well, I think in that hypothetical, which is, of course, very different from what was pleaded in this case, there still needs to be an occurrence. So in that hypothetical amended complaint, there's really no allegation that these Chelsea appellants did anything at all. Well, that's exactly the point of the hypothetical. In other words, if you accept that an occurrence or an accident has to be not subjectively foreseen, and not have been the part of deliberate conduct, under my hypothetical, the Chelsea defendants, the plaintiffs in this case, did not do anything wrong. But it would be, let's say, an equitable claim for unjust enrichment. They were unjustly enriched because they were the beneficiaries of a violation of the Sherman Act, perpetrated by their relatives. Their relatives participated in the conspiracy solely to benefit fortuitously on these particular plaintiffs. And so there would be no deliberate conduct, there would be no actual foresight of what their, you know, the black sheeps and their families, their relatives had done, but they would be the beneficiaries and potentially subject to liability under an unjust enrichment theory, all of which arguably would trigger a duty to defend, or would it? Well, I think to have the duty to defend, or to have coverage at all, what is needed is an occurrence. And in this case, given that, in this hypothetical amended complaint, these Chelsea appellants did nothing whatsoever. I don't think there's an occurrence there. It was an accidental benefit that was bestowed on them by virtue of their relatives. But in that hypothetical, there's no allegation that they did anything accidentally either. There's no allegation of an act in this hypothetical. Correct. In that hypothetical, they just did nothing whatsoever, which of course is very different than what was alleged here. I just briefly, if I may, would like to address the unjust enrichment, because that's something that the plaintiffs brought up in their reply brief, and we didn't have a chance to address in our briefing. And they suggest that this case could somehow be construed as an unjust enrichment case. Obviously, it wasn't an unjust enrichment case. It was very explicitly a conspiracy case. But in addition, unjust enrichment is a quasi-contractual theory of recovery. One, there's just no relationship whatsoever between these Chelsea appellants and Van Sant, except that they intentionally conspired against Van Sant, which is certainly not accidental. And furthermore, unjust enrichment requires that there be a conveyance of a benefit. There was no conveyance of a benefit by Van Sant to the Chelsea's. The only thing that happened, allegedly, in the underlying complaint, was that the Chelsea's conspired to enact these ordinances in order to restrain trade, and then that ended up harming Van Sant. There's no conveyance such that it would be inequitable for the Chelsea's to retain it without paying fair value for it. And another point that was brought up is that we need to look at the allegations in the complaint as a whole. And I completely agree with that. I think that's exactly right. And I think in this case what the allegations in the complaint as a whole show over and over again is that this is about intentional conduct, and it's not about an accident or an occurrence, which are synonymous in the policy. So following up on the unjust enrichment hypothetical that my colleague put to you, let me ask what do you think is the state of Colorado law on the duty to defend where there is some plausible potential amendment to a complaint that might implicate the policy? And what authority would you cite for what the state of the law is? Does the duty to defend not become implicated until an amendment is filed and a claim is asserted and new facts are alleged? Correct. I think an insurer has an ongoing duty to evaluate the claims that are being made against its insurers. So if a complaint is filed and it alleges conspiracy, Sherman Act violations, as in this case, that may not be covered. If in some hypothetical there's an amended complaint and now it alleges common law negligence, the insurer has an ongoing duty to evaluate those new allegations, and if those new allegations changes the coverage position, then the insurer has a responsibility to act accordingly, which in that case might well mean providing a defense. I think that the duty to defend while broad is not completely open-ended and unlimited, such that an insurer has to defend against claims for clearly intentional conduct because of the hypothetical possibility that at some point in the future, additional claims for accidental negligent conduct might be added. At that point, there's simply no limitations on the duty to defend whatsoever. One other point, if I may, in the time that's remaining. So one thing I was struck by is that there were complaints here about the nonspecificity of the underlying complaint and how we should understand it to have been insufficient, and perhaps that's true. But I think it's worth noting that the reason these Chaucey appellants prevailed in the underlying action wasn't because of lack of specificity of the complaint. It was because of the Norr-Pennington Doctrine. And the Norr-Pennington Doctrine is a creature of the First Amendment. There's a First Amendment right to petition the government, and thus that doctrine states that there can't be antitrust liability for petitioning activity. And that's how these appellants prevailed below, based on a doctrine that is specific to the antitrust context. And that doctrine has no relevance in the context of accidental negligent conduct. So effectively, what these Chaucey appellants are arguing here is that they were sued under Sherman Act claims. They asserted a defense that arises only in the context of Sherman Act claims. They prevailed on that defense. They prevailed again on that defense on appeal. But now they want to argue that the underlying complaint was really about accidental conduct. And that's not a change of position that we think should be undertaken. Well, Colorado law doesn't invite us to consider potential defenses that may be asserted when evaluating whether the policy, the duty to defend is implicated by the allegations in the complaint. Do you agree with that? I'm sorry, Your Honor. Could you say that again? I mean, I think Colorado law seems pretty clear. We look at the complaint. We look at the allegations. We look at the coverage. We look at the contract. And I think what you're – I think pregnant in your argument, at least, is the idea that we also consider potential affirmative defenses, or maybe – I guess what I mean to say is I understand your argument to say potential defenses an insured may assert in an underlying claim are also relevant in deciding the duty to defend. But there's no case law for that, is there?  I'm sorry if that was unclear, Your Honor. My point isn't about affirmative defenses further informing the duty to defend argument. Although, in this case, I think the allegations in the complaint are pretty crystal clear. My point is that – Correct, Your Honor. My point is that it's a naked change in position that these Jossie appellants made and prevailed on an argument in the underlying case. It's predicated entirely on this case being about antitrust liability. And now we're arguing that really, substantively, if you ignore almost everything that's in the complaint, that this case really is about accidental conduct. And that's what we think is wrong and should not be entertained. And unless Your Honors have any further questions, I will ask, respectfully request, that the district court's order be upheld. No, thank you. All right, thank you. And as you're on your way to the podium, to save you some time, let me pose the follow-up question to the last exchange you and I had. You talked about Colorado law inviting us judges, considering the duty to defend, to strip out of complaints conclusory allegations. And I suppose it comes back to the point that my colleagues were stressing earlier. I don't understand how your argument gets any stronger. The more paragraphs we strip out of the underlying complaint, assuming, your point, that they're conclusory. That still doesn't get us any closer to an allegation about accidental conduct or unforeseen consequences, does it? Your Honor, it does, actually. Because the actual, if you look at these very sparse, specific allegations of fact against our clients, they are alleged to have done something. And the ambiguity as to what they actually did is precisely what's contemplated by the duty to defend and the complaint rule. This is the Colorado public policy articulated by the Supreme Court in HECLA, which is that the insureds have an expectation of defense. And that risk that maybe eventually the duty to indemnify does not appear, that's shifted to the insurer, who is supposed to assume the defense and actually allow, going to the exchange that we just had, allow our clients to assert defenses like the Knorr-Pennington Doctrine, et cetera. On the complaint as pleaded, the Knorr-Pennington Doctrine and any sort of defenses are not implicated. And so, your Honor, again, we have to look at the allegations in a way as whether there's doubtful, plausible, possible, factual allegations that could be construed as our clients doing an act in which they didn't intend to restrain Van Sant from operating an RV park and that that resulted in property damage. And as it goes to that question on whether this really was accidental, whether they intended these restraints of trade that they were alleged to have intended, also speaking to the underlying litigation, it was resolved by a published decision of this court, which I would invite the judges to look at. And it found that there was an innocent explanation for passing these amendments, and that was the desire to keep the town clean. And I will stop there unless the court would allow me more time or has any further questions. Okay. Thank you very much. I also want to thank both counsels for your excellent briefing and your excellent advocacy today. It was greatly appreciated. This matter will be submitted.